THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

POCONO MOUNTAIN SCHOOL      :
DISTRICT,                            :
                                     :
           Plaintiff,           :     3:15-CV-764
     v.                       :     (JUDGE MARIANI)
                                     :
T.D., by and through his parent, S.D.L.  :
                                   :
          Defendants.        :

## MEMORANDUM OPINION

### I. INTRODUCTION

On April 20, 2015, to appeal a decision issued by a Pennsylvania Special Education Hearing Officer ("Hearing Officer"), plaintiff Pocono Mountain School District, (the "Plaintiff" or the "District"), filed a complaint in this district against T.D., a minor, and S.D.L., as parent and legal guardian of T.D., (collectively, the "Defendants"). (Doc. 1). On March 14, 2018, Magistrate Judge Carlson issued a Report and Recommendation in which he recommended that the Hearing Officer's award of twenty-six hours of compensatory education and tuition reimbursement for the 2013-2014 and 2014-2015 school years be upheld. (Doc. 74).

On July 20, 2018, this Court entered an Order adopting in part and overruling in part Judge Carlson's recommendation and establishing that though T.D. was not entitled to compensatory damages under Section 504 of the Rehabilitation Act of 1973, 20 U.S.C. § 794, ("Section 504"), he was entitled to tuition reimbursement under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., ("IDEA") and compensatory education

under the Rehabilitation Act.  (Doc. 85).  On appeal, the Third Circuit affirmed an award of compensatory education under Section 504 but otherwise vacated the findings made by this Court and the Hearing Officer.  *Pocono Mountain Sch. Dist. v. T.D.*, 790 F.App'x 387, 390 (3d Cir. 2019).

In view of the Defendants' overall successes, this Court will consider Defendants' Motion for the Award of Attorneys' Fees and Costs, (Doc. 91), and Supplemental Motion for the Award of Attorneys' Fees and Costs, (Doc. 109), filed on behalf of their legal counsel, McAndrews Law Offices, ("MLO").  For the reasons set forth below, the Court will grant the Defendants' request in part and award an adjusted amount in attorneys' fees and costs.

## II. PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

In and around the end of 2011, defendant T.D. was a third-grade student in the Pocono Mountain School District when an eight-year-old female student inappropriately touched T.D. on multiple occasions in sensitive areas of his body.  (Doc. 1 at ¶¶ 1-2).  In light of these incidents, T.D.'s mother notified the school of the alleged touching, after which the school immediately conducted an investigation and determined that T.D. and the female student should be separated at all times for the rest of the school year.  (Id. at ¶¶ 15, 19). Following the conclusion of the school's investigation, however, T.D. apparently started to exhibit behavioral and social issues, and in May 2012, the District agreed to evaluate T.D. for special education services.  (Id. at ¶¶ 22-28, 36-38).  Though the evaluation report issued in July 2012 concluded that T.D. did not have a disability under IDEA, T.D. continued

to exhibit behavioral and social problems at school throughout his fourth-grade year.  (Id. ¶¶ 51-56); *see also* (Id. at ¶¶ 60, 62, 81) (T.D. was eventually diagnosed with a conversion disorder and anxiety disorder).  In the summer of 2013, following the concluding of T.D.'s fourth-grade year in the Pocono Mountain School District, the District was informed that T.D. may be transferring to another school, and in the fall of 2013, in consideration of T.D.'s continued struggles, S.D.L. decided to place T.D. in private school.  (Id. at ¶¶ 108-08, 113-15).

In November 2013, S.D.L. retained a private school psychologist who evaluated T.D. and concluded that T.D. "appeared to be a student who qualified for services under the IDEA as a student with an emotional disturbance and who required special education/ related services."  (Doc. 1 at ¶ 122).  This report was later shared with the District, which agreed to conduct yet another independent evaluation of T.D.  (Id. at ¶ 127).  In May 2014, the independent evaluator retained by the District concluded that T.D. did not qualify as "an eligible student under IDEA," but did have a disability–"conversion disorder and anxiety disorder/not otherwise specified"–and qualified for Section 504 accommodations.  (Id. at ¶ 129).  The District thereafter agreed to implement and devise a Section 504 plan for T.D., should he return to the District's schools.  (Id. at ¶ 136).  T.D., however, remained in private school as of the time his mother filed the special education complaint that led to administrative proceedings.  (Id.  at ¶ 137).

Based on documentary evidence and witness testimony presented during a seven-day administrative hearing in October and November 2014, the Pennsylvania Special Education Hearing Officer determined that: T.D. was not eligible for a free and appropriate public education, ("FAPE"), under the Individuals with Disabilities Education Act because he "[did] not qualify as a student with a disability under the IDEA"; but was disabled due to his conversion disorder and anxiety disorder under Section 504 of the Rehabilitation Act of 1973 and was improperly denied FAPE under Section 504 as of May 14, 2013, which entitled him to one hour of compensatory education per school day for a period of twenty-six school days, as well as tuition reimbursement for the 2013-14 and 2014-15 school years. (Doc. 10-2 at 38-49).  The Hearing Officer also found that the District demonstrated deliberate indifference towards T.D. on the basis of his disability and that it thus would be unlikely that T.D. could return to the District as a student as the "relationship between the parties ha[d] been poisoned irretrievably."  (Id.).

On April 20, 2015, the plaintiff District initiated this action to appeal portions of the decision issued by the Hearing Officer.  (Doc. 1).  The Plaintiff sought, in part, to "reverse and overturn [the Hearing Officer's] findings and award under Section 504 and its findings of discrimination."  (Id. at ¶ 17).  In response, T.D. and his parent filed an answer with counterclaims seeking reversal of the "modest erroneous aspects of the Hearing Officer's decision," including the failure to provide full days of compensatory education for twenty-six school days instead of one hour per day and an award of attorneys' fees and costs.  (Doc.

4

16 at ¶ 228).  The Defendants also sought "further award of compensatory damages and additional reasonable attorneys' fees under Section 504, the Americans with Disabilities Act ('ADA'), 42 U.S.C. §§ 12131 et seq., and under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ('Title IX')."  (Id.).

On February 16, 2016, the Court issued an Order memorializing the parties' agreement that they would "not seek to supplement the administrative record" with motions to be decided "on the basis of the administrative record previously filed" and asserting that the counterclaims under Section 504, the ADA and Title IX would "proceed independent" of the appeal of the Hearing Officer's decision.  (Doc. 35 at 1-2) (the deadline for the conclusion of discovery for the Section 504, the ADA and Title IX counterclaims was also set for "90 days of the date of this Order").  Thereafter, the parties filed cross-motions for judgment on the administrative record or, in the alternative, for summary judgment.  (Docs. 42, 54).[1]  On September 25, 2017, the parties' motions were referred to Magistrate Judge Carlson who, in view of the parties' briefs and the record, issued an R&R recommending that the parties' cross-motions each be granted in part and denied in part, and that the

---

[1] As neither party indicated in the proposed orders attached with their motions what relief they sought, the Court was forced to "surmise[] from the parties' briefs that the District asks the Court to overturn the Hearing Officer's findings of disability, denial of FAPE, finding of deliberate indifference, and consequent compensatory education and tuition reimbursement damages under Section 504, and affirm the finding that TD is not disabled under IDEA, while TD requests the opposite relief, that is, affirming the Hearing Officer's findings as to the Section 504 analysis, and even extending the compensatory education 'from the period March 2012 to May 14, 2013.'"  (Doc. 85 at 5) (citing (Docs. 43, 54)).

Hearing Officer's decision be affirmed in all respects. (Doc. 74). On consideration of Judge Carlson's recommendation, this Court issued an opinion on July 20, 2018, that overruled in part the Hearing Officer's decision and the R&R, finding that though the Court agreed that T.D. was entitled to twenty-six hours of compensatory education under the RA, the record supported a determination that T.D. was entitled to tuition reimbursement under the IDEA and not the RA as there was sufficient evidence to show T.D. was disabled under the IDEA but insufficient evidence to show the District was deliberately indifferent towards T.D.'s condition under the RA. (Doc. 85) (furthermore, the Court noted that the Defendants were not entitled to compensatory damages).

The District eventually appealed this Court's decision to the Third Circuit, (Doc. 89), and T.D. and his parent followed with a cross-appeal, (Doc. 93). On October 29, 2019, in consideration of the factual record and the findings by the Hearing Officer and this Court, the Third Circuit concluded that the Defendants were entitled to twenty-six hours of compensatory education. *Pocono Mountain Sch. Dist.*, 790 F.App'x at 390. The Court also noted in its opinion, however, that during the intervening period following the Hearing Officer's decision and the filing of the Plaintiff's Notice of Appeal, Pocono Mountain School District had reimbursed the Defendants for tuition paid for private education and T.D. had reenrolled as a student in the Pocono Mountain School District. *Id*. Therefore, in light of these changes in circumstances, the Court vacated this Court's IDEA eligibility determination and its deliberate indifference finding as both determinations bore "only on

the tuition reimbursement award." *See id.* ("[n]either party has a personal stake in the outcome of the claims related to tuition reimbursement, and the relevant issues are moot").

In September 2018, while the parties' appeals were still before the Third Circuit, T.D. filed a Motion for the Award of Attorneys' Fees and Costs. (Doc. 91). In response, the District filed a Motion to Stay Consideration of Defendants' Request for Attorneys' Fees, (the "Motion to Stay"), and the Defendants filed an opposition to the District's Motion. (Docs. 97, 104). Before this Court decided the Plaintiff's Motion to Stay, the Defendants filed a Supplemental Motion for Award of Attorneys' Fees and Costs, (Doc. 109), incorporating hours and costs incurred regarding, amongst other things, the litigation of the Third Circuit appeal, the Plaintiff's Motion to Stay, and the Defendants' two motions seeking attorneys' fees and costs, (collectively, the "Motions for Attorneys' Fees and Costs"). *See also* (Docs. 92-1, 117-1) (MLO's invoices indicate that the firm's attorneys and legal assistants exhausted approximately 381.19 additional hours and incurred $3,346.95 in additional costs in the intervening period between their initial application for fees and costs and their supplemental motion). Through these Motions for Attorneys' Fees and Costs, the Defendants seek an award for fees and costs in the amount of $616,715.80. (Doc. 117-1 at 208). The Court will therefore consider the arguments set forth in these Motions concurrently.

## III. STANDARD OF REVIEW

The provision in the Rehabilitation Act, like the IDEA, allows for a prevailing party to recover attorney's fees and costs as, "in any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  29 U.S.C. §794a.  For a party to recover attorney's fees and costs, the party must show that it was successful.  As recognized by the District Court, a "prevailing party" must be successful in the sense that it has been awarded some relief by a court.  *A.W. v. E. Orange Bd. of Educ.*, 248 F.App'x 363, 364 (3d Cir. 2007) (*John T. v. The Delaware County Intermediate Unit*, 318 F.3d 545, 551-52 (3d Cir. 2003)).  In this regard, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Once a party establishes that they are entitled to attorney's fees and costs and were successful on their claims, courts must determine what constitutes a reasonable fee.  To assess a "reasonable fee," the reviewing court must calculate the "lodestar amount," which reflects "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  Through these calculations, the lodestar method yields a fee that is presumptively reasonable.  *Perdue v. Kenny A. ex rel.*

*Winn*, 559 U.S. 542, 552 (2010).  In *Hensley*, the Supreme Court explained that the lodestar

calculation:

> provides an objective basis on which to make an initial estimate of the value of
> a lawyer's services. The party seeking an award of fees should submit evidence
> supporting the hours worked and rates claimed. Where the documentation of
> hours is inadequate, the district court may reduce the award accordingly. The
> district court also should exclude from this initial fee calculation hours that were
> not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be
> overstaffed, and the skill and experience of lawyers vary widely. Counsel for
> the prevailing party should make a good faith effort to exclude from a fee
> request hours that are excessive, redundant, or otherwise unnecessary, just as
> a lawyer in private practice ethically is obligated to exclude such hours from his
> fee submission. "In the private sector, 'billing judgment' is an important
> component in fee setting. It is no less important here. Hours that are not
> properly billed to one's client also are not properly billed to one's adversary
> pursuant to statutory authority." *Copeland v. Marshall*, 205 U.S.App.D.C. 390,
> 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley*, 461 U.S. at 433-34.

In support of a lodestar calculation, the party seeking attorney's fees thus has the

burden to prove that its request for attorney's fees is reasonable by submitting evidence

supporting the reasonableness of both the hours it expended throughout the litigation and

the rate it applied per hour.  *Hensley*, 461 U.S. at 433.  For the claimed fee rate, the fee

applicant must provide "reference to 'the community billing rate charged by attorneys of

equivalent skill and experience performing work of similar complexity.'"  *Evans v. Port Auth.*

*of New York & New Jersey*, 273 F.3d 346, 360-61 (3d Cir 2001) (quoting *Student Pub.*

*Interest Research Group v. AT&T Bell Labs*, 842 F.2d 1436, 1450 (3d Cir. 1988)).  "The

Court should consider the experience and skill of the prevailing party's attorney[] and

compare the rates to those prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation." *Watcher v. Pottsville Area*

*Emergency Med. Serv., Inc.*, 559 F.Supp.2d 516, 521 (M.D. Pa. 2008). "[I]n most cases,

the relevant rate is the prevailing rate in the forum of the litigation." *Interfaith Cmty. Org. v.*

*Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005).

The reviewing court may not set an attorney's fees based on a generalized sense of

what is usual and proper but "must rely upon the record." *Smith v. Philadelphia Hous.*

*Auth.*, 107 F.3d 223, 225 (3d Cir. 1997) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1506 (3d

Cir. 1996)). Furthermore, the reasonableness of the hourly rate and hours expended may

be rebutted by the party opposing the request for attorney's fees. Specifically,

> [t]he party seeking attorney's fees has the burden to prove that its request for
> attorney's fees is reasonable. To meet its burden, the fee petitioner must
> "submit evidence supporting the hours worked and rates claimed." *Hensley v.*
> *Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In
> a statutory fee case, the party opposing the fee award then has the burden to
> challenge, by affidavit or brief with sufficient specificity to give fee applicants
> notice, the reasonableness of the requested fee. *Bell v. United Princeton*
> *Properties, Inc.*, 884 F.2d 713 (3d Cir.1989). The district court cannot "decrease
> a fee award based on factors not raised at all by the adverse party." *Id.* at 720;
> *see Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir.1985),
> vacated on other grounds, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731,
> reinstated, 807 F.2d 49 (3d Cir.1986), cert. denied, 481 U.S. 1049, 107 S.Ct.
> 2179, 95 L.Ed.2d 836 (1987). Once the adverse party raises objections to the
> fee request, the district court has a great deal of discretion to adjust the fee
> award in light of those objections. *Bell*, 884 F.2d at 721.

*Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). In contrast, "when 'the

[applicant] has met his *prima facie* burden under the community market rate lodestar test,

10

and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward.'"  *Watcher*, 559 F.Supp.2d at 521 (quoting *Ridley v. Costco Wholesale Corp.*, 217 F.App'x. 130, 139 (3d Cir. 2007)); *see also City of Scranton v. Davis*, 2018 WL 3126443, at *3 (M.D. Pa. June 26, 2018).

## IV. ANALYSIS

The Rehabilitation Act, like the IDEA, allows for a prevailing party to recover attorney's fees and costs as, "in any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  29 U.S.C. §794a.  To recover attorney's fees and costs, a party must first show that it was successful on its claims.  *A.W.*, 248 F.App'x at 364.  Once success is established, courts must then calculate what would constitute a reasonable fee for the legal assistance provided in light of the success achieved.  To determine a reasonable fee, the Court must establish to what degree the hours billed by the Defendants' attorneys and paralegals in this matter were reasonable and thereafter determine what would reflect a reasonable hourly rate for these attorneys and paralegals.  *Hensley*, 461 U.S. at 433.

### A.  The Defendants' Success on the Merits

To merit an award of attorney's fees and costs, a plaintiff must first establish that it was the "prevailing party."  *Hensley*, 461 U.S. at 433.  A "prevailing party," as a legal term of art, is defined as "[a] party in whose favor a judgment is rendered, regardless of the amount

11

of damages awarded." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001) (citing Black's Law Dictionary 1145 (7th ed. 1999)). At a minimum, a party thus "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the [other party]." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989); *see also A.B. v. Pleasant Valley School District*, 2019 WL 2715681, at *2 (M.D. Pa. July 28, 2019) (citing *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) (a party prevails "'if she achieves relief and if 'there is a causal connection between the litigation and the relief from the defendant'")).

Where a party has "achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. Nevertheless, whether a party prevails and what degree of success they achieved are separate analyses. As such, it is clear that the Defendants' counsel was successful in upholding the Hearing Officer's award of 26 hours of compensatory education and allowed their client, during the pendency of the parties' appeals, to recover tuition reimbursement. The Defendants were thus successful to a degree that would not foreclose MLO from obtaining attorneys' fees and costs.

## B. Calculation of a Reasonable Fee

Once a party has been deemed to have prevailed in accordance with *Hensley*, courts must calculate what would be considered a reasonable fee for the services rendered

by the party's legal counsel.  To assess a "reasonable fee," the reviewing court must

calculate the "lodestar amount," which reflects "the number of hours reasonably expended

on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  District

courts, however, have a "great deal of discretion" to adjust the fee award once objections

are raised as to the reasonableness of hours or the hourly rate requested by a fee applicant.

*Rode*, 892 F.2d at 1183.  Thereafter, courts may further adjust the attorneys' fees awarded

by the degree of success achieved.  *See Hensley*, 461 U.S. at 434 (the extent of a plaintiff's

success is a "crucial" consideration that may lead a court to adjust the fee upward or

downward, even where the plaintiff is "deemed 'prevailing'").  The Court will address these

considerations in turn.

### a.  Reasonableness of the Hours Expended

Defendant T.D. and his parent contend that their counsel reasonably expended

1,346.31 hours in the litigation of their claims before the Hearing Officer, this Court, and the

Third Circuit.  (Doc. 117-1 at 204).  Of these hours, approximately 965.12 hours were

incurred for work completed up to and including the filing of the Defendants' initial Motion for

the Award of Attorneys' Fees and Costs.  (Doc. 92-1 at 159).  Further, MLO approximately

incurred an additional 381.19 hours in the preparation and filing of the Defendants' Third

Circuit appeal briefing and the supplementary support for the Defendants' Motions for

Attorneys' Fees and Costs, (Doc. 117-1 at 204).  The Plaintiff raises numerous objections in opposition to these fees.[2]

i.  Outrageously Excessive Request for Fees

When submitting a request for attorneys' fees, "it is the duty of the requesting party to 'make a good faith effort to exclude ... hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.'"  *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 403 (3d Cir. 2018) (quoting *Hensley*, 461 U.S. at 434).  The Third Circuit, however, has found that district courts " have the discretion to deny a fee request in its entirety when the requested amount is 'outrageously excessive' under the circumstances."  *Clemens*, 903 F.3d at 402 (citing *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)).  If courts were not given this discretion, it is reasonable to assume that "'claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first place.'"  Clemens, 903 F.3d at 403 (quoting *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 96 (4th Cir. 1993)).

_____

[2] Though the District lists eleven specific objections to the hours requested by the Defendants, *see* (Doc. 100-3), these objections may be best consolidated into five main categories: outrageously excessive request for fees; vague billing entries; excessive and redundant entries; attorneys engaging in paralegal or clerical work; and unsupported costs. The School District's objections regarding T.D.'s request for the reimbursement of costs shall be addressed separately from those regarding the T.D.'s request for fees.

In opposition to the attorneys' fees requested by the Defendants, the Plaintiff contends that the Defendants' "original and supplemental fee petitions are a *tour de force* of excess billing." (Doc. 115 at 3). The Plaintiff suggests that "[w]ithout even undertaking a line by line review[,] the gross fee requested as well as the gross charge for the appeal process[] must shock the conscience of any reasonable practitioner who practices under civil rights law." (Id.). The Plaintiff therefore moves for sanctions and a complete denial of the Defendants' request for attorneys' fees in consideration of such "outrageously excessive" billing. (Id. at 23-24). The Court agrees in large part with the District that the attorneys' fees requested by the Defendants on their counsel's behalf are excessive in light of the relief obtained and could be seen as T.D.'s counsel's attempt to submit an "opening bid in the request for an award," knowing full well that their application is unreasonable. *See Clemens*, 903 F.3 d at 403 (quoting *Landow*, 999 F.2d at 96); *see also Young v. Smith*, 905 F.3d 229, 236 (3d Cir. 2018) (denial of a fee petition over $700,000 warranted, particularly where the amount of recovery was limited and the applicant's counsel had been admonished before for overbilling).

In the Court's view, T.D.'s claims for attorney fees are saved from outright rejection for the sole reason that T.D. and his parent did not initially file the complaint in this district, nor were they the first to file an appeal before the Third Circuit. Though the Defendants submitted counterclaims and a cross-appeal in response to the decisions by the Hearing Officer and this Court respectively, it cannot be assumed that this matter would have still

proceeded if not for the initiation of suit by the School District.  The Court therefore will not completely withhold attorneys' fees from the Defendants' counsel.

### ii.  Excessive and Redundant Entries

Even though the Defendants' request for attorneys' fees will not be considered "outrageously excessive" such that their application will be denied in its entirety, the District also argues that a line-by-line analysis of MLO's invoices indicates that individual components of the hours billed by the firm were not reasonable.  (Doc. 115 at 5, 7-15).  The Court will address these in turn.

### 1.  Excessive and otherwise unnecessary billing

According to T.D.'s counsel, "[t]he bulk of the attorney time in this matter was expended by two attorneys, Heather M. Hulse and Michael E. Gehring."  (Doc. 92-3 at ¶ 10); (Doc. 110-10 at ¶ 10) (same).  T.D.'s counsel also claims, however, that several other attorneys, including Dennis McAndrews, Heidi Konkler-Goldsmith, Michael Connolly, and Katherine Ryan, "in their supervisory roles[,] consulted and advised on the case, and/or reviewed and edited written filings."  (Doc. 110-10 at ¶¶ 15, 37-39) (in addition, MLO attorneys John Goldsborough, Jennifer Bradley, Jessica Nguyen, and Tanya Alvarado, along with five legal assistants and a law school intern, also "devoted some limited professional time" to this Matter).[3]  Pocono Mountain, however, argues that the involvement

---

[3] Though attorney Dennis D. Woody also appears on the docket as an attorney of record, he makes no appearance in MLO's invoices or in the Defendants' Motions for Attorneys' Fees and Costs.  *See* (Docs. 92, 117, 117-1).

of so many attorneys and legal assistants beyond the allegedly experienced attorneys handling the "bulk" of the work was unnecessary.  *See* (Doc. 100 at 8) (the "hourly rate charged presumed expertise," whereas it appears unnecessary at the rate requested to have "more than one additional attorney, never mind [eight]").

Throughout the course of litigation, it may be acceptable for attorneys to assist their fellow colleagues either by providing advice or handling matters generally outside the purview of their colleague's expertise to ensure a successful result for their client.  Likewise, "[i]t is not necessarily unreasonable for senior attorneys to review the work of less experienced associates."  *Walker v. Gruver*, 2013 WL 5947623, at *6 (M.D. Pa. Nov. 5, 2013) (citing *Bell v. Lockheed Martin Corp.*, 2012 WL 1677240, at *2 (D.N.J. May 14, 2012) (finding that reviewing and commenting on another's work product are distinct from writing the document to be reviewed)).  Nevertheless, when senior attorneys review each other's work and bill at equally high hourly rates, "it may be unreasonable to charge for both senior attorneys at the same rate and for the same number of hours."  *Walker*, 2013 WL 5947623, at *6.  Hours billed by multiple attorneys for completing the same tasks may similarly be unreasonable.  *Rode*, 892 F.2d at 1187.

Though the Court recognizes that a larger firm may employ different attorneys or paralegals for discrete projects within the greater scope of a litigation, the tasks enumerated within MLO's invoices reflect no such practice for this matter.  The firm's invoices instead could be described as reflecting a large collection of small-scale efforts by various

individuals tangentially linked to the case.  No selection of billing entries reflects this better than those submitted by one of the firm's paralegals, whom attorney McAndrews describes in his affidavit as "an extremely experienced senior certificated paralegal," but whose invoices present a stream of incremental billing entries that add up over time to a request for fees exceeding twelve thousand dollars.  *See* (Doc. 117-1) (within 234 invoice entries submitted by this paralegal, 154 entries list the lowest increment of time utilized by MLO in its billing, .13 hours, with an average of .27 hours worked for each entry logged).  The Court must thus question why, while "[t]he bulk of the attorney time" was allegedly exhausted by two seasoned attorneys with extensive experience in the area of education law, the Defendants employed eight other attorneys to act in "supervisory roles" and six non-lawyers to provide supplementary assistance.

As "the necessary corollary to commanding a high hourly rate is the expectation that counsel can handle a number of complicated tasks on her own," attorneys Gehring and Hulse, utilizing rates on par with or exceeding the rates claimed by other attorneys in the firm, should have required minimal assistance when litigating this case.  *Beattie v. Line Mountain Sch. Dist.*, 2014 WL 3400975, at *4 (M.D. Pa. July 10, 2014) (citing *Choike v. Slippery Rock Univ. of Pa.*, 2007 WL 3120097, at *10 (W.D. Pa. Oct.22, 2007)).  The Court thus finds it reasonable to disallow the hours billed by attorneys Konkler-Goldsmith, Connolly, Ryan, Bradley, Nguyen, and Alvarado.  *See* (Doc. 117-1) (invoices approximately

reflecting a collective 37.07 hours for these six attorneys).[4]  Likewise, it seems unnecessary

for the Defendants to have needed the assistance of five separate legal assistants and a

"law school intern."  (Doc. 100-10 at ¶ 30) (emphasis omitted).  Therefore, the Court will

also disallow the hours billed by legal assistants Janice Hardy, April Butler, Elisabeth

Brissell, and Aaliyah Edwards, as well as the time requested by MLO's intern.  *See* (Doc.

117-1) (invoices collectively reflecting approximately 120.52 hours billed for these five

individuals).  As such, of those attorneys and paralegals that were included in MLO's

invoices as individuals who conducted work on the Defendants' behalf, the Court will

consider what hours were reasonably billed by attorneys Gehring, Hulse, McAndrews, and

Goldsborough, and paralegal Paul.

## 2.  Excessive and redundant correspondence

Though a significant portion of MLO's invoices are to be discounted as excessive

due to the unnecessary submissions of hours by attorneys and paralegals tangentially

related to this matter, the Plaintiff also objects to certain communications included in MLO's

invoices that the Plaintiff contends are excessive and redundant.  (Doc. 115 at 8-11).  It is

generally expected, and seemingly required, that lawyers will conduct interoffice discussions

and maintain ongoing communication with their clients throughout the pendency of litigation.

---

[4] The Court also notes, and considered in its decision, the fact that none of these attorneys filed appearances in this matter, were mentioned on the docket, or were seemingly involved in any meaningful way that the Court could identify outside the affidavits and invoices in support of the Defendants' Motions for Attorneys' Fees and Costs.

Nevertheless, billing for legal communications must have its limits, and, as here, filing numerous independent invoice entries throughout the course of a single day for nothing more than the discussion of a case would appear less like a necessary expenditure of time and more like an effort to add minute entries to boost the number of invoice lines. *See Defurio v. Elizabeth Forward Sch. Dist.*, 2008 WL 2518139, *4-5 (W.D. Pa. June 19, 2008) (selectively deducting entries as even though there is a "necessity of discussing legal issues and case strategies with several different counsel," not all legal discussions are inherently reasonable).

Upon review of MLO's invoices, the Court finds a string of such time entries that, in the Court's opinion, rise to the level of "excessive" or "redundant." *See* (Doc. 100-3) (listing Pocono Mountain's claims for fee reductions, including excessive and redundant "internal communications between attorneys and staff" or "unnecessary correspondence"). In particular, on numerous occasions, MLO attorneys and paralegals submitted multiple line entries on a single day for "[i]nteroffice communication[s]" with other firm employees, even while those with whom the individual was allegedly communicating failed to submit complementary entries. *See e.g.* (Doc. 117-1 at 143-44) (on July 23, 2018, attorney Hulse submitted twelve independent entries for "[i]nteroffice communication" with other MLO attorneys, including several without matching entries from the attorneys with whom Hulse supposedly conversed); (Id. at 155-56) (on August 16, 2018, attorney Hulse submitted seven separate entries for "[i]nteroffice communication" with other MLO attorneys, though

no other attorney had matching entries).  Similarly, MLO attorneys and paralegals submitted

various invoice entries that individually spanned the course of a single day but were

comprised of numerous identical line items each independently asserting the "review" or

"preparation" of a correspondence to or from a client or counsel.  *See e.g.* (Doc. 117-1 at

151) (eight separate line entries on the same day for "[r]eview of correspondence from" and

"[p]reparation of correspondence to" counsel or client); (Id. at 136-137) (on March 27, 2018,

attorney Gehring submitted six line entries for the "review" or "preparation" of

correspondence to or from a client or counsel, in addition to four entries for "[i]nteroffice

communication" without any matching entries from Gehring's fellow attorneys).  The Court

will therefore deduct entries regarding communications to or from MLO attorneys or

paralegals that both fail to provide sufficient detail regarding the content of communication

and appear alongside similar entries in a manner that effectively stacks line entries on top of

one another.[5]

---

[5] The School District also contends that T.D.'s counsel wrongfully billed for
communications "involving the Pennsylvania Department of Education" as "[t]hese matters
have nothing to do with the litigation at hand." (Doc. 115 at 18).  In response, the
Defendants claim that these communications "have everything to do with it" as the "extreme
and confrontational tactics utilized by counsel for the District in this case made it necessary
for this office to file a complaint with PDE's Bureau of Special Education's Division of
Complaint in order to obtain the District's compliance with court order." (Doc. 117 at 24).
Though the Court would question whether contacting the PDE was necessary in this matter,
without more context, it is unable to make a determination that these hours were in fact
unreasonable.

3. Excessive and redundant billing for work within counsel's expertise

Lastly, the Plaintiff argues that the Defendants' attorneys unnecessarily incurred fees that would appear unreasonable when considering "the level of knowledge, experience and expertise claimed by [Defendants'] counsel." (Doc. 115 at 3). In particular, the Court must recognize that there are certain areas of practice that experts in the field of education law should be able to handle without expending too much effort. Discerning what areas of law require further study and what areas are within the scope of counsel's knowledge, however, would require a fact-intensive inquiry to ascertain where T.D.'s counsel's expertise begins and ends, an inquiry which invites speculation and in which this Court declines to engage. Instead, the Court must generally balance the hours billed against the hours it would consider reasonable for each portion of the matter.

In this regard, there are multiple invoiced items outside the realm of internal communications that the District contends could appear excessive, including hours billed for the preparation of the T.D.'s opposition to Pocono Mountain's Motion to Stay, (Doc. 104), the Third Circuit appellate brief, the Third Circuit oral argument, the Third Circuit appellate reply brief, the affidavit by Dennis McAndrews, (Doc. 92-3),[6] and the closing argument for the December 12, 2014, due process hearing. (Doc. 115 at 7-15). Of these filings, the Court looks to select documents filed before this Court, most notably T.D.'s opposition to the

---

[6] The Court notes that the time spent by MLO on preparation of the Defendants' fee petition will be deducted. *See infra* Section IV(C)(b)(ii).

District's Motion to Stay and T.D.'s due process hearing closing argument.  *See* (Id. at 3)

(reflecting the Pocono Mountain's attempt to separate T.D.'s counsel's hours invoiced by

task).

First, in considering the hours expended to prepare the Defendants' due process

hearing closing argument, though the Court cannot say that expending over seventy hours

of attorney time on a forty-seven-page closing argument for the Hearing Officer was

reasonable, it also cannot definitively say that the hours spent were unreasonable,

particularly as the arguments presented required a full convergence of factual and legal

analysis for a seven-day hearing.  (Doc. 11-2); *see also School Dist. of Philadelphia v.*

*Williams*, 2016 WL 877841, at *5 (E.D. Pa. Mar. 7, 2016) (citing cases in which courts found

that attorneys reasonably expended considerable time preparing for a due process hearing).

Instead, when comparing the hours spent on T.D.'s due process closing argument to those

spent preparing an opposition to the School District's Motion to Stay, the Court finds a clear

divergence in the economies applied to each.  *Compare* (Doc. 104) (twelve-page brief in

opposition to the District's Motion to Stay reflecting basic legal arguments composed largely

by attorney Gehring, who apparently required approximately forty-five hours to complete the

task) *with* (Doc. 11-2) (seventy-four-page due process hearing closing argument composed

almost exclusively by attorney Hulse, who billed for approximately seventy hours).[7]

_____

[7] This Court was also unable to find any motion for attorneys' fees and costs that
requested hours for preparing a motion to stay brief even remotely comparable to those
invoiced here.  *See Lewis v. Smith*, 2010 WL 3081938, at *4 (M.D. Pa. Aug. 6, 2010) (the

The Court thus contrasts the forty-five hours expended by a seasoned attorney with respect to a rudimentary twelve-page brief in opposition to the District's Motion to Stay with the assertion that T.D.'s counsel reasonably spent roughly seventy hours formulating a seventy-four-page due process closing argument and concludes that the time expended on the twelve-page brief has not been justified. The Court will therefore consider a deduction of hours from MLO's invoices associated with the firm's preparation of the briefing opposing the District's Motion to Stay. *But see infra* Section IV(B)(c)(i) (effectively deducting all fees associated with the Defendants' application for attorneys' fees and costs, including hours billed for the creation of the McAndrews affidavit and the opposition to the Plaintiff's Motion to Stay).

### iii. Vague Billing Entries

Separate and apart from its arguments regarding the excessive and redundant nature of MLO's invoices, Pocono Mountain claims that "the biggest problem with the fee petition is that the vast majority of the entries lack any detail whatsoever and are exceptionally vague and ambiguous." (Doc. 115 at 5). In this regard, the School District claims that it is "unable to determine from the entries whether the time is properly billed or whether the extent of the time billed for each entry is reasonable." (Id. at 5-6). The Plaintiff points to the numerous entries that use the phrases "[p]reparation of correspondence to

_____

court, citing the applicant's fee invoices, determined that 25.9 hours spent over the course of several months on multiple motions, including less than five hours spent on a motion for an extension of time to file an application for attorneys' fees, was reasonable).

counsel," "[r]eview of correspondence from counsel," and "telephone communication" to and from "counsel," as many of these entries also fail to provide a clear indication as who constituted "counsel" or what the correspondence concerned.[8]  (Id. at 6-7).  Likewise, the District argues that invoice entries for "[f]ile review," "[r]eview of records," and "[r]eview transcript" lacked appropriate specificity to determine why the review of such materials was necessary.  (Id. at 7).

It is well established that invoices submitted to support a request for attorneys' fees and costs need not perfectly describe every minute of work conducted on behalf of a client with precise accuracy, but only include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys."  *Rode*, 892 F.2d at 1190 (quoting *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)).  A fee petition is thus merely "required to be specific enough to allow the

_____

[8] It is well established that "internal discussions" of this kind between counsel and "legal staff regarding the case" can be "properly charged to one's client, and are therefore recoverable."  *Souryavong v. Lackawanna Cty.*, 159 F. Supp. 3d 514, 537 (M.D. Pa. 2016); *see also United States ex rel. Doe v. Pa. Blue Shield*, 54 F.Supp.2d 410, 415 (M.D. Pa. 1999) (it is not "inherently unreasonable to have more than one attorney involved in such matters as meetings and telephone conferences").  Courts, however, must still be able to determine in the context of the invoices "if the hours claimed are unreasonable for the work performed."  *Rode*, 892 F.2d at 1190.  Nevertheless, as the subset of questionable entries regarding the Defendants' correspondence have already been found to be either excessive or redundant, the Court need not determine whether those same invoice entries were also vague.  *See supra* Section IV(B)(a)(ii)(2).

district court 'to determine if the hours claimed are unreasonable for the work performed.'"
*Rode*, 892 F.2d at 1190 (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983)).

      Courts in this district have found that "[w]hile a substantial number of vague entries
may be a reason to exclude hours from the lodestar calculation, that a block may have an
entry such as 'review file' is not a reason to exclude the entire entry." *Pennsylvania Blue
Shield*, 54 F. Supp. 2d at 415.  Instead, the more "appropriate approach" for courts would be
to "look at the entire block, comparing the listed activities and the time spent, and
determining whether the hours reasonably correlate to all of the activities performed." *Id*.
There are numerous instances within MLO's invoices where certain lines include minimal
detail. *See e.g.* (Doc. 117-1 at 42-44) (over 48 hours billed from November 24, 2014, to
December 13, 2014, for the "[r]eview of file" and "[r]eview of file materials").  Though such
lines may not in themselves provide any clear indication as to what was being "reviewed" or
why, the Court, in viewing invoice entries in the context of each full block, is often able to
piece together an idea of what work was being conducted.  *See* (id.) (lines indicating that
counsel reviewed files or file materials were within the same billing block as the
"[p]reparation of Closing Argument," indicating a clear connection between the two).  In such
cases as here, where there is no endemic issue, the Court finds that writing these entries off
completely is unnecessary.

iv. Attorneys Engaging in Paralegal or Clerical Work

"When a lawyer spends time on tasks that are easily delegable to non-professional assistance [sic]," courts have found that otherwise reasonable legal service rates are not always applicable. (Doc. 100 at 11) (citing *Halderman v. Pennhurst State Sch. and Hospital*, 49 F.3d 939 (3d Cir. 1995)). In line with such thinking, courts "cannot condone 'the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals.'" *Halderman*, 49 F.3d at 942 (3d Cir. 1995) (citing *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983)). In such instances, "reducing the rate for tasks requiring less skill is proper." *Moffitt v. Tunkhannock Area Sch. Dist.*, 2017 WL 319154, at *6 (M.D. Pa. Jan. 20, 2017) (citing *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)) (citation omitted).

The School District argues that "[t]hroughout the billing submitted," T.D.'s attorneys submitted invoices for "tasks that are normally performed by [p]aralegals." (Doc. 115 at 15). Specifically, the Plaintiff mainly points to entries that indicate the Defendants' attorneys "update[d] case status." (Id.). As its main support for such a position, the Plaintiff claims that the process of updating the case status should not be handled by an attorney but a paralegal, as indicated in the invoices submitted by MLO's paralegals. (Id. at 15-16); *see* (Doc. 117-1 at 12) (one of several examples where both an MLO attorney and paralegal filed separate invoice entries within a one-week period reflecting that they updated the case status). Plaintiff Pocono Mountain also highlights entries that indicate that attorneys

27

prepared or reviewed documents or conducted research on issues that it argues should

have been handled by paralegals.  (Id.).  Nevertheless, though such tasks may be properly

delegated to a paralegal, it cannot be said that attorneys may not also provide updates to

the case status or handle discrete research projects.  *See E.E.O.C. v. Federal Express

Corp.*, 537 F.Supp.2d 700, 724 (M.D. Pa. 2005) (distinguishing clearly clerical tasks such as

copying and faxing letters or setting up telephone conferences from work that may be

reasonably conducted by an attorney, such as preparing discovery requests).  The Court

therefore deems a reduction of the Defendants' lodestar calculation for these efforts

unnecessary.

### b.  Reasonable Hourly Rate

In support of the lodestar calculation, defendants T.D. and his parent have the

burden to prove that their request for attorneys' fees is reasonable by submitting evidence

supporting the reasonableness of both the hours their attorneys and paralegals expended

throughout the litigation and the rate they applied for these hours.  *Hensley*, 461 U.S. at

433.  In determining the reasonableness of an hourly rate, the Court should "consider the

experience and skill" of the Defendants' attorneys and paralegals, and "compare the rates to

those prevailing in the community for similar services by lawyers of reasonably comparable

skill, experience, and reputation."  *Watcher*, 559 F.Supp.2d at 521.  In most cases, however,

"the relevant rate is the prevailing rate in the forum of the litigation."  *Interfaith Cmty. Org.*,

426 F.3d at 705.

i.  MLO's Attorney Rates

The Defendants, through their Motions for Attorneys' Fees and Costs, seek hourly rates for their attorneys ranging from $240 to $525 per hour.[9]  As reflected in MLO's invoices, "[t]he bulk of the attorney time in this matter was expended by two attorneys, Heather M. Hulse and Michael E. Gehring."  (Doc. 92-3 at ¶ 10).  In addition, attorney Dennis McAndrews acted in a supervisory role throughout the litigation, while attorney John Goldsborough both filed an appearance with this Court and was active on the docket later in the course of this matter.  (110-10 at ¶¶ 10, 20).  Attorney McAndrews, to support the rates utilized by attorneys Hulse and Gehring, as well as the other attorneys involved in this matter, submitted two affidavits detailing the experience and credentials of the attorneys employed by the McAndrews Law Offices.  (Doc. 92-3 at 5-9); *see also* (Doc. 110-10 at 13).

Through his initial affidavit, McAndrews, a practicing attorney for over 40 years and the "principal and founder" of the McAndrews Law Offices, asserted that MLO "specializes in special education and civil rights matters, and handles hundreds of such cases every year" in which the firm "routinely achieve[s] successful results for [its] clients, leading to dramatically better educational outcomes for disabled students."  (Doc. 92-3 at ¶¶ 2-6).  At

---

[9] The Defendants attached an affidavit by attorney Dennis McAndrews to their opening Motion, through which they propose a rate of $495.00 per hour for attorneys McAndrews, Heidi Konkler-Goldsmith, Michael E. Gehring, Michael J. Connolly, and Katharine M. Ryan, and a rate of $455.00 per hour for attorney Heather M. Hulse.  (Doc. 92-2 at 11).  These rates, and the list of attorneys involved in this matter, were later updated in the Defendants' Supplemental Motion.  *See infra* n. 10 (citing (Doc. 110-10 at 13)).

the time of the Defendants' initial filings, MLO employed various attorneys who assisted in litigating the Defendants' case, including: attorney Hulse, a lawyer with MLO since 1999, who, according to McAndrews, is "one of the premiere [sic] special education lawyers in Northeastern Pennsylvania" with experience with "disability-related work concerning special needs trusts, and guardianships," in addition to experience "as a therapist and intensive case manager serving children in Pennsylvania with special needs prior to attending law school;" and attorney Gehring, an MLO shareholder practicing law since 1989 who gained experience working in the Philadelphia District Attorney's Office and clerking in the Eastern District of Pennsylvania before joining the firm in 2011 where he primarily handles the firm's federal court practice with a focus on "special education and federal civil rights." (Doc. 92-3 at ¶¶ 11-19). McAndrews then filed his updated affidavit in support of the Defendants' Supplemental Motion for Award of Attorneys' Fees and Costs and both proposed increased rates and provided the credentials for several new attorneys in addition to those listed in the initial invoices.[10] (Doc. 110-10 at 13-14). One of these new attorneys was attorney

---

[10] In contrast to the initial rates they proposed, the Defendants, through the second McAndrews affidavit, state that: "[e]ntries in the amount of $525 per hour and billed to 'DCM' in the billing statement attached to the Memorandum are those of [Mr. McAndrews]. Hours billed at $495.00 and billed to 'HBK' are attributable to attorney Heidi Konkler-Goldsmith. Hours billed at $525.00 and billed to 'MEG' are attributable to attorney Michael E. Gehring. Hours billed at $475.00 and billed to 'HMH' are attributed to attorney Heather M. Hulse. Hours billed at $525.00 and billed to 'MJC' are attributable to attorney Michael J. Connolly. Hours billed at $495.00 and billed to 'KMR' are attributable to attorney Katharine M. Ryan. Hours billed at $495 per hour and billed to 'JWG' are attributable to John W. Goldsborough. Hours billed at $495.00 per hour and billed to 'JLB' are attributable to attorney Jen. L. Bradley. Hours billed at $240.00 per hour and billed to 'JTN' are attributable to attorney

Goldsborough, who had worked in the Philadelphia District Attorney's Officer for over nineteen years and "joined the firm in June of 2019 as a federal litigation and appellate counsel specialist."  (Doc. 110-10 at ¶ 20).

In further support of their requested rates, the Defendants provided affidavits filed on the MLO's behalf by several attorneys that operate in northeastern Pennsylvania.  *See* (Docs. 92-6 – 92-9, 110-11 — 110-14).  These submissions, however, do not provide the hourly rates for the declarants, but essentially point to the experience of Dennis McAndrews and the McAndrews Law Offices generally and fail to go beyond a broad conclusion that "an hourly rate of $500 per hour is reasonable and competitive in this market."  (Doc. 92-7 at 3); *see Mulero v. Walsh*, 2018 WL 1084235, at \*13 (M.D. Pa. Feb. 28, 2018) (declarations that do not provide the declarants' hourly rates and only propose what is "reasonable and appropriate" are "not particularly helpful" in establishing a reasonable rate).  Likewise, the Defendants submitted the 2018 Community Legal Services of Pennsylvania fee schedule and opinions and orders from cases from the Eastern District of Pennsylvania involving MLO, none of which firmly establish the prevailing market rate in northeastern Pennsylvania.  *See Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454, 509 (M.D. Pa. 2016) (CLS fee schedule does not bear on prevailing market rates in the Middle District of

---

Jessica Nguyen. Hours billed at $495.00 per hour and billed to 'TAA' are attributable to Tanya Alvarado."  (Doc. 110-10 at 13). The Court notes, however, the rates utilized by the Defendants for attorneys Jen Bradley and Tanya Alvarado in their invoices are not the same as those listed in this second McAndrews affidavit.  *See* (Doc. 117-1) (using a $385.00 per hour rate for Jen Bradley and a $395.00 per hour rate for Tanya Alvarado).

Pennsylvania); *but see Benjamin v. Dep't of Pub. Welfare of Com. of Pennsylvania*, 2014 WL 4793736, at \*8 (M.D. Pa. Sept. 25, 2014) (noting that the CLS fee schedule is still instructive, even if not definitive).

Pocono Mountain, in opposition to the hourly rates proposed by T.D.'s counsel, contends that the requested rates "presume[] expertise," whereas MLO submitted invoices for not just ancillary assistance by one or two other attorneys, but eight.[11]   (Doc. 100 at 6-7). In addition, the School District also cites to *A.B. v. Pleasant Valley Sch. Dist.*, which the Court finds instructive.   In particular, the court in *A.B.* examined the rates requested by MLO for its attorneys, which closely mirror those proposed by MLO here.   *See* 2019 WL 2715681, at \*6-7.   According to the Plaintiff, a "comparison of the fee claims made in *A.B.* with the fee claims made in this case" reflects:

| Attorney | *A.B.* Claimed | Allowed [in *A.B.*] | *T.D.* Claimed |
|---|---|---|---|
| McAndrews | $525 | $375 | $525 |
| Gehring | $525 | $375 | $525 |
| Connolly | $495 | $325 | $525* |
| Ryan | $495 | $325 | $495 |

---

[11] In contrast, the School District argues its counsel "is more experienced than any one of Defendants' counsel," and so it is the "District counsels' rate that should be applied to no more than two of Defendants' counsel and one paralegal." (Doc. 100 at 8). Nevertheless, the Court, as with the Defendants' requested rates, will not broadly accept that the Plaintiff's rates were reasonable or that they should similarly be applied to the Defendants' counsel.

| Hulse | $495 | $300 | $475* |
|---|---|---|---|
| Hardy (PL) | $195 | $165 | $195 |
| Paul (PL) | $195 | $140 | $175 |
| Butler (PL) | $165 | $130 | $165 |

(Doc. 115 at 4); *see also Shane T. v. Carbondale Area Sch. Dist.*, 2021 WL 4478237, at *7 (M.D. Pa. Sept. 30, 2021) (utilizing the same rates for the same attorneys and paralegals as those in A.B.).

As the District notes, "this [C]ourt is not legally bound to apply the same hourly rates" as those in *A.B.* Nevertheless, though "[h]ourly rates that were set for a specific attorney in previous court decisions do not generally constitute record evidence," past rates do provide a foundation where "those rates were set for the same attorney and for the same type of work of a contemporaneous period." *Katona v. Asure*, 2019 WL 636979, at *3 (M.D. Pa. Feb. 14, 2019) (citing *Smith*, 107 F.3d at 226). Such is the case here, where the Defendants, as in *A.B.*, raised claims that the District "denied [T.D.] a free, appropriate public education (FAPE) under the IDEA and Section 504 of the Rehabilitation Act." *A.B.*, 2019 WL 2715681, at *1.

Furthermore, it must be recognized that the rates utilized by the court in *A.B.* generally reflect rates allowed in the Middle District of Pennsylvania. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("reasonable fees are to be calculated according to the prevailing

market rates in the relevant community").  As set forth in this Court 's recent findings in *Trickel v. Discount Gold Brokers, Inc.*, "the prevailing market rates in this district have evolved over time from a range between $150 and $300 an hour ten years ago to include rates for experienced counsel" similar to those allowed in *A.B.  See* 2022 WL 452407, at *12 (M.D. Pa. Feb. 14, 2022) (citing cases from 2011 to 2019 finding rates approaching and, in very limited instances, exceeding $400 per hour for attorneys with twenty to thirty-five years of experience reasonable); *see also Finnegan v. Smith*, 2019 WL 1052013, at *5 (M.D. Pa. Mar. 5, 2019) (plaintiff failed to establish "that the prevailing rate in the Wilkes-Barre/Scranton area is $400 per hour," which led this Court to find an hourly rate of $375 reasonable for an attorney with thirty years of experience).

Though defendants T.D. and his parent have submitted various forms of evidence in an attempt to establish that the rates proposed by MLO are reasonable, they have failed to meet their burden of showing that rates from $475 to $525 per hour are aligned with the market rates in northeastern Pennsylvania.  Instead, based on the prevailing market rates in the community and those set forth in *A.B. v. Pleasant Valley School District*, this Court will reduce the hourly rates requested by MLO to reflect rates of $375 per hour for attorney McAndrews, $375 per hour for attorney Gehring, $325 per hour for attorney Goldsborough, and $300 per hour for attorney Hulse.[12]

_____

[12] Though it is not necessary for the Court to determine what would be reasonable hourly rates for attorneys Connolly, Ryan, Konkler-Goldsmith, Bradley, Alvarado, and Nguyen, see supra IV(B)(a)(ii)(1), similar logic would apply to the rates for those attorneys

ii.  MLO's Paralegal Rates

In recent years, courts have established reasonable hourly rates for paralegals in the

Middle District of Pennsylvania with a "range from $75 to $150 depending on skill and

experience."  *Clemens*, 264 F.Supp.3d at 661-62 (citing *Borrell*, 207 F.Supp.3d at 512-13

(hourly rates of $100 and $130 for paralegals with eight and seventeen years of experience,

respectively, found reasonable); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 2014 WL

2860863, at *13 (M.D. Pa. June 28, 2016) (approving hourly rates of $120 for a paralegal

with six years of experience and $130 for a paralegal with thirteen years of experience);

*Dino v. Pennsylvania*, 2013 WL 6504749, at * 3 (M.D. Pa. Dec. 11, 2013) (approving an

hourly rate of $150 for a legal assistant in a complex FLSA case); *Dee v. Borough of

Dunmore*, 2013 WL 685144, at *11 (M.D. Pa. Feb. 25, 2013) (approving an hourly rate of

$75 for a legal assistant); *Overly v. Global Credit & Collection Corp., Inc.*, 2011 WL

2651807, at *5 (M.D. Pa. July 6, 2011) (noting that typical rates for legal assistants in the

Middle District of Pennsylvania at the time were between $70 and $120 an hour)).  In

instances where a party requesting fees and cost reimbursement has not provided any

credentials for its paralegals, courts have utilized an hourly rate around $100 an hour.

*Souryavong*, 159 F.Supp.3d at 530 (finding an hourly rate of $100 for a legal assistant

reasonable though the assistant's qualifications were not known); *Trickel*, 2022 WL 452407,

---

as to the discounted rates allowed for attorneys McAndrews, Gehring, Hulse, and
Goldsborough.

Case 3:15-cv-00764-RDM   Document 120   Filed 04/08/22   Page 36 of 48

at *13 (a rate proposed by an applicant of $110 accepted where it "reasonably conform[ed] to the rate of the forum").

T.D. requests rates for MLO's paralegals and legal assistants ranging from $95.00 to $195.00.  (Doc. 110-10 at ¶¶ 30, 37) (Defendants requesting a rate of $175 per hour for paralegal Paul, who has assisted attorney Hulse in special education matters and due process proceedings in the MLO's Scranton office since 2009).[13]  As with the rates requested for their attorneys, the Defendants insufficiently rely on the affidavits filed on MLO's behalf by other Pennsylvania attorneys, the 2018 CLS fee schedule, and the affidavits provided by McAndrews.  (Docs. 110-7, 110-10 — 110-14).  In consideration of the traditional market rates, however, the rates requested by the Defendants are outside the scope of those generally allowed for such services.  *See e.g. A.B.*, 2019 WL 2715681, at *7; *Shane T.*, 2021 WL 4478237, at *7.  Instead, the Court will rely on the rates previously allowed in this district for MLO's paralegals and will utilize an hourly rate of $140 per hour for paralegal Paul.  Id.

_____

[13] As with the rates requested for their attorneys, the Defendants, through the second McAndrews affidavit, state that: "Hours billed at $195.00 and billed to 'JH' are attributable to senior certified paralegal Janice Hardy. Hours billed at $175.00 and billed to 'RP' are attributable to senior paralegal Roseann Paul. Hours billed at $165.00 per hour and billed to 'AB' are attributable to legal assistant April Butler. Hours billed at $165.00 per hour and billed to 'EB' are attributable to legal assistant Elisabeth Bissell. Hours billed at $165.00 per hour and billed to 'AE' are attributable to legal assistant Aaliyah Edwards." (Doc. 110-10 at ¶¶ 30).  The Defendants also requested an hourly rate of "$95.00 per hour" for a "legal assistant Research Assistant, Law Student Intern." (Id.).  As with the Defendants' attorneys, however, the Court need not determine the reasonable rates for the Defendants' paralegals or legal assistants not entitled to fees.  *See supra* IV(B)(a)(ii)(1).

### c. Degree of Success Achieved

Though parties characterized as "prevailing parties" are allowed an award of attorney's fees and costs when authorized by statute, courts must also determine the level of success obtained in relation to the relief sought and time expended. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation"). In this regard, Pocono Mountain "challenges the extent to which Defendants can be said to have prevailed." (Doc. 100 at 6). Therefore, the Court will determine the level of success achieved for the Defendants on the merits of the Defendants' claims and the success of the Defendants' Motions for Attorneys' Fees and Costs.

### i. Defendants' Success on the Merits

Following the decision by the Hearing Officer, T.D. sought to uphold certain aspects of the decision before this Court, including "the award of compensatory education against the District for a portion of Thomas's 2012-2013 student year, private school tuition reimbursement for Thomas's 2013-2014 and 2014-2015 school years, and a finding that, due to the breakdown in relations between the parties, Thomas could not return to the District." *See* (Doc. 16 at ¶ 227) (the Hearing Officer also found that "the District acted with deliberate indifference to Thomas's disabilities and educational needs … [and] the relationship between the District and the family has been "poisoned irretrievably").

37

T.D., however, looked to reverse the Hearing Officer's finding that "Thomas was not

an eligible student pursuant to the Individuals with Disabilities Education Act ('IDEA')" and

correct his failure to "award Thomas additional compensatory education from January 27,

2012, through May 14, 2013." (Doc. 16 at 228, 297-298) (arguing that the Hearing Officer's

decision "was erroneous for its failure to award compensatory education to Thomas for the

period prior to May 2013 ... [and] awarding Thomas only one hour per day of compensatory

education even during the period for which it was awarded"). Furthermore, in their

counterclaims, the Defendants also sought "a further award of compensatory damages and

additional reasonable attorneys['] fees under Section 504, the American with Disabilities Act

("ADA"), 42 U.S.C. §§ 12131 et seq., and under Title IX of the Education Amendments of

1972, 20 U.S.C. § 1681 ("Title IX")." (Doc. 16 at ¶ 228).

Defendants T.D. and his parent contend in their Motions for Attorneys' Fees and

Costs that they "achieved near-total success in their key goals" raised on appeal before this

Court, and that there was "a direct 'causal connection' between the entirety of the litigation

and the Court's award." (Doc. 92 at 5, 15). This Court did find that T.D. was disabled under

Section 504 of the Rehabilitation Act and the IDEA, was entitled to twenty-six hours of

compensatory education under Section 504, and was entitled to tuition reimbursement

under the IDEA. (Doc. 86). The Court, however, also reversed the Hearing Officer's finding

that the District acted with deliberate indifference under Section 504 and determined that

T.D. was not entitled to additional full-day compensatory education or damages. (Id.). The

Defendants' counterclaims under Section 504, the ADA, and Title IX were also ordered to proceed independent of the Defendants' appeal of the Hearing Officer's findings, and, to the Court's understanding, these claims were not pursued further.  (Doc. 35).

Furthermore, though the Defendants were awarded twenty-six hours of compensatory education under Section 504 and were reimbursed for private-school education tuition, the Third Circuit vacated this Court's determinations that T.D. was disabled pursuant to the IDEA and any finding as to whether the District acted with deliberate indifference.[14]  *Pocono Mountain Sch. Dist.*, 790 F.App'x at 390 (as the District had already reimbursed the Defendants for tuition, any legal findings regarding whether such reimbursement was warranted were moot).  Therefore, from this perspective, the Defendants' successes equated to a mere accumulation of compensatory education hours with incidental tuition reimbursement based on findings determined by the Third Circuit to be moot.  Eventually, T.D. also returned to Pocono Mountain to renew his educational

---

[14] The Defendants contend that they were the "prevailing party" before the Third Circuit as they "obtained all of the key relief they sought." (Doc. 110 at 9).  In particular, they claim the "Third Circuit … fully agreed with the Family's arguments that [] issues were either moot or waived," even though it was the District that pioneered the argument that issues regarding tuition reimbursement were moot.  *See* Reply Brief for Appellees/Cross Appellants at *1, *Pocono Mountain Sch. Dist. v. T.D. et al.*, 790 F.App'x 387 (3d Cir. Apr. 5, 2019) (No. 18-2807), 2019 WL 1517451 (the District stated that as it "already ha[d] reimbursed the Family for Thomas's tuition" and TD had "re-enrolled in the District," the correctness of the lower court's award of tuition reimbursement was "no longer at issue before the Court").  Instead, the Third Circuit vacated the majority of the legal findings made in the Defendants' favor and left intact only the Hearing Officer's determination that T.D. was entitled to twenty-six hours of compensatory education.

instruction, in direct contradiction to the Hearing Officer's belief that "Thomas could not return to the District" as the relationship between the District and the Defendants had been "poisoned irretrievably." (Doc. 16 at ¶ 227).

Though the Defendants would be considered "prevailing parties" for purposes of determining whether attorneys' fees and costs are warranted, it cannot be said that they were successful to the degree that the Defendants propose–i.e., that they "achieved near total success"–particularly in consideration of the unsuccessful counterclaims the Defendants raised before this Court and the Third Circuit's ruling vacating several legal findings. (Doc. 92 at 15); see Pocono Mountain Sch. Dist., 790 F.App'x at 390 (vacating findings under the IDEA). In this regard, a party may not be considered a "prevailing party" as to claims vacated on appeal, even if they were vacated for mootness. John T., 318 F.3d at 555-56 (citing Buckhannon, 532 U.S. at 600-01). A deduction in attorneys' fees would thus be warranted based on the Defendants' mixed results. (Doc. 115 at 20) (citing Hensley at 439) ("[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of attorneys' fees.").

Separately, even where a party is awarded a significant recovery through litigation, courts will not overlook expenditures of time or resources unnecessarily incurred on unsuccessful or meaningless legal efforts only increasing attorney's fees and costs. Though T.D. recovered both tuition reimbursement and compensatory education, he also alleged ADA and Title IX claims seeking similar recovery that, to this Court's understanding,

did not progress beyond the Defendants' initial counterclaim pleadings. *See* (Doc. 16 at 52-54); *see also* (Doc. 35) (the Defendants' Title IX, ADA, and Section 504 claims to proceed independent of the Plaintiff's appeal).  A reduction to MLO's attorneys' fees is likewise warranted in regard to these failed claims.

Courts, however, have found that there is no precise formula for reducing attorneys' fees based on limited success.  *Hensley*, 461 U.S. at 436.  "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  *Id*. at 436-37.[15]  In this instance, as MLO's invoices are quite extensive and selectively vague, it would be impractical for the Court to separate the firm's efforts leading the Third Circuit to affirm twenty-six hours of compensatory education from claims that were unsuccessful or vacated.  Therefore, this Court, in balancing the successes achieved for the Defendants before the Hearing Officer and this Court against their unsuccessful claims and overturned findings of fact, finds that a sixty-percent reduction (60%) to the lodestar calculation is appropriate for fees incurred in MLO's litigation of the Defendants' claims under the IDEA, RA, the ADA, and Title IX.  *See Mary Courtney T. v. Sch. Dist. of Phila.*, 2009 WL 185426, at *9 (E.D. Pa. Jan. 22, 2009) (reducing lodestar by 45% to reflect partial success where plaintiffs, represented by MLO, sought relief under the IDEA for a fourteen-month period but were only awarded relief as to about four months).

---

[15] In an effort to bring the Defendants' request for fees and costs more in line with their overall success, the School District suggests a reduction of 73% to the Defendants' requested fees based on its calculation of the Defendants' success.  (Doc. 115 at 23).

ii. Success of the Defendants' Application for Attorneys' Fees and Costs

It is well established that, to determine appropriate attorneys' fees and costs, courts will calculate the "lodestar amount," which reflects "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. In support of a lodestar calculation, the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable by submitting evidence supporting the reasonableness of both the hours it expended throughout the litigation and the rate it applied per hour. *Id*. These principles, as established in *Hensley v. Eckerhart*, also "apply with equal force to a claim for attorneys' fees incurred in preparing a fee petition." *Student Pub. Interest Research Grp. of New Jersey*, 842 F.2d at 1455. "[W]here fee applicants do not fully succeed in recovering their fees, the award must be reduced to reflect incomplete success on the fee award." *Id*. (emphasis added). "Time spent on the fee petition is to be analyzed separately from that spent on the main part of the litigation" and the hours "reduced, following *Hensley*, when the petition is only partially successful." *Fletcher v. O'Donnell*, 729 F.Supp. 422 (E.D. Pa. 1990).

Though MLO will be granted certain attorneys' fees, it cannot be said that the Defendants were truly successful in meeting their burden to show that their request in their Motions for Attorneys' Fees and Costs was reasonable. In fact, as set forth above, the Defendants failed to prove that the hours MLO exhausted on this matter were reasonable or that the hourly rate they requested for their attorneys and paralegal were reasonable as

compared to the traditional market rates of this district.  *See supra* Section IV(B)(b)(i).  Even

further, had the Defendants been the party to initially pursue claims in federal court, this

Court may well have been justified in denying the Defendants' Motions for Attorneys' Fees

and Costs in their entirety.  *See supra* Section IV(B)(a)(i).  As a result, the Court finds that

the Defendants are entitled to recover zero percent of the fees and costs stemming from the

litigation of the current Motions.[16]

## C.  Calculation of Reasonable Costs

In addition to their request for reasonable attorneys' fees, the Defendants request

reimbursement for costs incurred in the litigation of this matter equaling $9,562.09.  (Doc.

117-1 at 163).  The Plaintiff, however, raises two separate objections to the Defendants'

request for costs.  First, the Plaintiff contends that the costs incurred by the Defendants for

the use of expert witnesses should be deducted as "the IDEA does not permit such a claim."

(Doc. 100 at 8) (citing *Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*, 548 U.S. 291, 293-

94 (2006)).  Under § 1415(i)(3)(B), the IDEA allows courts, in their discretion, to "award

reasonable attorneys' fees as part of the costs."  *Arlington*, 548 U.S. at 293 (citing §

1415(i)(3)(B)).  In *Arlington v. Murphy*, the Supreme Court established, however, that as

---

[16] The Court, after conducting a careful review of the record, finds that attorneys
Gehring, Hulse, McAndrews, and Goldsborough collectively exhausted approximately
171.51 hours on the litigation of the Defendants' Motion for the Award of Attorneys' Fees
and Costs.  *See generally* (Doc. 117-1) (the Court notes paralegal Paul seemingly played
no role in the litigation of this Motion).  These hours thus will be deducted from the
Defendants' overall request.

Congress enacted the IDEA pursuant to the Spending Clause, the availability of fees and costs is limited to those "unambiguously" set forth in the statute.  548 U.S. at 296.  The Court in *Arlington* thus focused on the clear distinction between the availability of "attorney's fees as a part of costs" and Congress's failure to allow for "expenses" or "costs."  Therefore, though attorney's fees are recoverable for IDEA claims under 28 U.S.C. § 1920, the Court found that Congress did not unambiguously allow for open-ended expenses or costs such as reimbursement to prevailing parents for services rendered by experts.  *Id*. at 297.

In this matter, however, following the opinion by the Third Circuit overturning portions of the rulings made by the Hearing Officer and this Court, the Defendants were no longer considered successful as to their IDEA claims.  (Doc. 117 at 25).  Instead, the Defendants were successful only in regard to their claim for compensatory education under the Rehabilitation Act, which courts have determined allows for costs otherwise foreclosed under the IDEA.  Instead, successful parties under the RA may seek "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964." *I.H. v. Cumberland Valley Sch. Dist.,* 842 F.Supp.2d 762, 777 (M.D. Pa. 2012) (citing 29 U.S.C. § 794a(a)).  Courts relying on the remedies authorized by the Civil Rights Act thus may allow a prevailing party under the RA "a reasonable attorney's fee (including expert fees) as part of the costs."  42 U.S.C. § 2000e–5(k).  As a result, MLO may be reimbursed for expert costs.  *See also* A.B., 2019 WL 2715681, at *9 ("courts have held expert costs may be recovered under Section 504").

In contrast, the School District also argues that the MLO double billed for travel by invoicing both the hours spend traveling to hearings or meetings as well as for mileage. (Doc. 115 at 19). In this regard, the Court agrees with the District. As set forth in *A.B. v. Pleasant Valley Sch. Dist.*, applicants "cannot recover both fees for travel and costs for mileage." 2019 WL 2715681, at *6. Instead, "'the prevailing practice in a given community' governs whether 'reasonable travel time' is 'billed at cost or at market rates.'" *Id.* (quoting *Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002) (citation omitted)). Though T.D. contends that "[t]he District's objection is, frankly, inexplicable," it appears explicably clear that his counsel both billed for the time spent traveling and the costs incurred from doing so. *Compare* (Doc. 117-1 at 35) (attorney Hulse billing for "[t]ravel to and attendance at Due Process Hearing" on October 2, 2014) *with* (Id. at 205) ("[m]ileage to/from Due Process Hearing"). Therefore, as Pocono Mountain does not object to the market rate for the hours traveled, the Court will deduct $319.19 in mileage costs associated with the due process hearing requested by the Defendants.

### D.  Calculation of the Defendants' Attorneys' Fees and Costs

In consideration of its findings above, this Court finds it reasonable to allow fees stemming from work completed by attorneys McAndrews, Gehring, Hulse, and Goldsborough, and paralegal Paul. As set forth in the invoices submitted as part of their application for fees and costs, the Defendants request fees stemming from approximately 53.84 hours spent litigating this matter by attorney McAndrews, 518.50 hours by attorney

Gehring, 482.21 hours by attorney Hulse, 66.95 hours by attorney Goldsborough, and 64.08 hours by paralegal Paul.[17]  Of these hours, the Court calculates that approximately 171.51 hours were expended by these five individuals on the litigation of the Defendants' Motions for Attorneys' Fees and Cost, including 10.16 hours by McAndrews, 89.51 hours by Gehring, 4.89 hours by Hulse, and all 66.95 hours billed by Goldsborough.

Before calculating the appropriate lodestar amount, however, the Court will first deduct invoice entries reflecting communications to or from MLO attorneys or paralegals that both fail to provide sufficient detail regarding the content of the communication and appear alongside similar entries in a manner that effectively stacks line entries on top of one another.[18]  *See supra* Section IV(B)(a)(ii)(2) (finding such entries excessive or redundant). Upon a careful review of MLO's invoices, such entries equate to 3.34 hours claimed by attorney Gehring, 30.73 hours by attorney Hulse, and .25 hours by paralegal Paul.  The Court thereby finds that the Defendants reasonably requested 1,152.41 hours on behalf of their legal counsel for MLO's collective efforts.

---

[17] The Court notes that MLO's invoices included 9.02 hours that were listed as "No Charge," including 7.51 hours for attorney Hulse and .13 hours for attorney Gehring.  The Court did not include these hours in its calculations.

[18] In an effort to ensure that no entries within MLO's invoices were discounted twice, the Court first separated any entries that it determined were related to the Defendants' Motion for the Award of Attorneys' Fees and Costs from those that were related to the Defendants' claims under the claims under the IDEA, RA, the ADA, and Title IX.  The Court makes selective line-review deductions only from those entries not clearly regarding the current Motions.

Based on the degree of success obtained for the Defendants, the Court also finds that a one-hundred-percent reduction (100%) is appropriate for the 171.51 hours exhausted on tasks in support of the Defendants' Motions for Attorneys' Fees and Costs. *See e.g.* (Doc. 117-1 at 143-204) (invoices reflect numerous tasks completed in support of the Defendants' Motions such as the preparation of McAndrews' affidavit, the "petition for fees," or the memorandum opposing the Plaintiff's Motion to Stay). In contrast, the Court finds a sixty-percent reduction (60%) to the remaining 980.90 hours is appropriate to account for the Defendants' limited success as to their claims under the IDEA, RA, the ADA, and Title IX. Utilizing the hourly rates found reasonable by this Court and in consideration of the appropriate deductions, the Court calculates that the Defendants' counsel is entitled to $127,564.78 in fees.[19] The Defendants' counsel is also entitled to the reimbursement of $9,242.90 in costs stemming from with the litigation of this matter.[20]

---

[19] After deducting both the excessive and redundant hours inherent in MLO's invoices and one-hundred percent of the fees associated with the litigation of this Motion, the Court calculates, using the reasonable hourly rates set forth above, that the Defendants were entitled to the following fees: 43.68 ($375) = $16,380.00 for attorney McAndrews; 425.65 ($375) = $159,618.75 for attorney Gehring; 446.59 ($300) = $133,977.00 for attorney Hulse; 0 ($325) = $0 for attorney Goldsborough; 63.83 ($140) = $8,936.20 for paralegal Paul. These fees collectively equate to $318,911.95. After applying a sixty-percent reduction, however, the Court finds that the Defendants are entitled to $127,564.78 in fees.

[20] The Court deducts $319.19 in mileage costs from the Defendants' initial request for reimbursement in the amount of $9,562.09. *See supra* Section IV(C).

## IV. CONCLUSION

For the aforementioned reasons, Defendants' Motions for Attorneys' Fees and Costs will be granted in part and the Defendants' will be awarded fees and costs in accordance with the Court's calculations.[21]   A separate Order will follow.

Robert D. Mariani
United States District Judge

---

[21] Plaintiff Pocono Mountain School District, instead of filing a brief in opposition to defendant T.D.'s Motion for Award of Attorneys' Fees and Costs, (Doc. 91), filed a "Motion in Opposition to Defendants' Motion for Attorneys' Fees and Costs," (Doc. 99).  The Court, however, views this "Motion" by the Plaintiff purely as a response in opposition to the Defendants' initial request for fees and costs and not a request for attorneys' fees and costs on the part of Pocono Mountain School District.  Nevertheless, to the degree that the District's Motion in any way reflects a request for attorneys' fees and costs to be granted to the School District, such a motion is DENIED, whereas the Motion is otherwise GRANTED insofar as this Court has reduced the attorneys' fees and costs awarded to T.D.'s counsel for the reasons set forth herein.